IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UTOPIAN WIRELESS CORPORATION,**
400 Seventh Street, NW, Suite 406
Washington, DC 20004

                Plaintiff,

v.

**CASTLETON STATE COLLEGE**,
575 Stone Cutters Way
Montpelier, VT 05602,

Case No. 20-3480

**VERMONT TECHNICAL COLLEGE**,
575 Stone Cutters Way
Montpelier, VT 05602,

**JURY TRIAL DEMANDED**

**LYNDON STATE COLLEGE**,
575 Stone Cutters Way
Montpelier, VT 05602, and

**VERMONT STATE COLLEGES,**
575 Stone Cutters Way
Montpelier, VT 05602

                Defendants.

## COMPLAINT

Plaintiff Utopian Wireless Corporation ("Utopian"), by and through its undersigned counsel, as for its Complaint against Defendants Castleton State College ("Castleton"), Vermont Technical College ("VTC"), Lyndon State College ("Lyndon"), and Vermont State Colleges ("VSC"), hereby states as follows:

1. This action seeks specific performance of three lease agreements between the parties relating to spectrum licenses.

## PARTIES

2. Plaintiff Utopian Wireless Corporation, is a Delaware corporation, registered to do business in Washington, D.C., with its principal place of business at 400 Seventh Street, NW, Suite 406, Washington, DC 20004.

3. Defendant Castleton is a public Vermont college within the Vermont State Colleges system with its principal office at 575 Stone Cutters Way, Montpelier, VT 05602.

4. Defendant VTC is a public Vermont college within the Vermont State Colleges system with its principal office at 575 Stone Cutters Way, Montpelier, VT 05602.

5. Defendant Lyndon is a public Vermont college within the Vermont State Colleges system with its principal office at 575 Stone Cutters Way, Montpelier, VT 05602.

6. Defendant VSC is a public corporation established pursuant to 16 V.S.A. Chapter 72 with its principal offices at 575 Stone Cutters Way, Montpelier, VT 05602.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the action is between citizens of different States.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Utopian's claims occurred in the District of Columbia. Utopian maintains an office in the District of Columbia from which it conducts its business with Defendants. Defendants also have transacted business in the District of Columbia. Specifically, this action involves the application, issuance, and extension of de facto long term spectrum leases of Defendant, which application must be made to, and authorization issued by, the

Federal Communications Commission, located in Washington, D.C. Defendants have counsel located in the District of Columbia to assist with these matters.

## FACTUAL ALLEGATIONS

*Spectrum Leases*

9. Regulation of the radio frequencies of the United States is critical to ensure: (a) that bandwidth is allocated to useful purposes that serve the public interest, such as television, radio, emergency responders, and cellular/mobile wireless transmissions; and (b) that multiple users are not utilizing the same frequencies in the same geographic regions at the same time. In order to regulate the use of radio frequencies in the United States, the Federal Communications Commission ("FCC") issues licenses that authorize a licensee to transmit on specific frequencies or ranges of frequencies in particular geographic areas. Because the licenses authorize a licensee to utilize a portion of the electromagnetic spectrum, they are commonly known as "spectrum licenses."

10. Spectrum licenses have differing restrictions on the manner in which a licensee can use licensed spectrum. For example, through different licenses, the FCC permits licensees to use certain frequencies for FM radio transmission, cellular telephone transmission, television transmission, or air traffic control transmission.

11. Educational Broadband Service ("EBS") is a specific kind of spectrum license. EBS is a prime wireless spectrum band that is currently being used by wireless carriers in the national provision of advanced wireless services, including mobile broadband services. Since January 10, 2005, the FCC's rules allow holders of EBS spectrum to lease their licenses to third-party wireless carriers for terms of 30 years. Prior to January 10, 2005, EBS licensees could lease their licenses only for terms up to 15 years.

12. An EBS license authorizes a licensee to utilize a 22.5 megahertz ("MHz") wide allocation of spectrum at frequencies within the range of 2496-2690 MHz.

13. A prime spectrum license is a valuable commodity. EBS licensees may, consistent with the terms of their licenses and applicable FCC rules, enter into spectrum leases with third parties, authorizing the third-party lessee to use a portion or all of the EBS license holder's spectrum for commercial purposes.

*Utopian's Leases with Defendants and Defendants' Breach*

14. The FCC has issued three EBS licenses to Defendants authorizing them to transmit on certain frequencies in the Rutland, Vermont area.

15. On February 2, 2007, Utopian and Defendants entered into three EBS Lease Agreements (collectively, the "Leases"), each to transmit in the Rutland, Vermont market pursuant to Defendants' FCC licenses for an aggregate term of 30 years. A true and correct copy of the lease between Castleton and Utopian is attached hereto and incorporated herein by reference as **Exhibit 1**. A true and correct copy of the lease between VTC and Utopian is attached hereto and incorporated herein by reference as **Exhibit 2**. A true and correct copy of the lease between Lyndon and Utopian is attached hereto and incorporated herein by reference as **Exhibit 3**.

16. Under its license, Castleton is authorized to transmit on EBS channels C1, C2, C3, and C4 under call sign WQCN270.

17. Under its license, VTC is authorized to transmit on EBS channels A1, A2, A3, and A4 under call sign WQCI646.

18. Under its license, Lyndon is authorized to transmit on EBS channels D1, D2, D3, and D4 under call sign WQCN711.

19. Section 1.6.11 of the Leases describes an "FCC Long Term Lease Application" as, "all forms and related exhibits, certifications, and other documents necessary to obtain the FCC's consent to this Agreement and satisfy the FCC's requirements for long term de facto lease approval as set forth in 47 C.F.R. § 1.9030(e)."

20. Section 10.1 of the Leases states as follows: "**Application Preparation.** Lessee will prepare and submit in its name all applications, amendments, petitions, requests for waivers, and other documents necessary for the proper operation of Lessee Capacity. *Lessor will prepare and submit* all applications, amendments, petitions, requests for waivers, and other *documents necessary for* the modification, maintenance and renewal of the License that, under FCC Rules, may only be filed by Lessor, including any such filings reasonably requested by Lessee. *The Parties will cooperate in the preparation and submission of all applications, amendments, petitions, requests for waivers, and other documents necessary to secure any FCC approval, consent or other action required to effectuate this Agreement*." (emphasis added).

21. Section 16 of the Leases states, in part, as follows: "Lessor will use its best efforts to obtain and maintain all licenses, permits and authorizations required or desired by Lessee for the use of the Channels, and will remain eligible under the FCC Rules to provide the Lessee Capacity."

22. Despite Plaintiff's requests, Defendants have refused to file the necessary FCC Long Term Lease Applications with the FCC that are required to effectuate the Leases, in breach of the Leases.

23. Section 20.2 of the Leases provides for specific performance in the event of a breach as follows: "**Specific Performance.** Lessor acknowledges that the License and Channels subject to this Agreement are unique and the loss to Lessee due to Lessor's failure to perform this

Agreement could not be easily measured with damages. *In the event of a breach by Lessor of Section 10.1 herein, Lessee will be entitled to injunctive relief and specific enforcement of this Agreement* in a court of equity without proof of specific monetary damages, but without waiving any right thereto, in the event of breach of this Agreement by Lessor." (emphasis added).

24. Section 18.1 requires Defendants to indemnify Plaintiff, including reasonable attorney's fees, resulting from any breach by Defendants.

25. Section 20.3 of the Leases provides for the recovery of attorneys' fees by the prevailing party in any action relating to a breach of the Leases.

26. The three Leases combined are worth an estimated more than $1,000,000.

## FIRST CAUSE OF ACTION

### Breach of Contract

27. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 26 of this Complaint.

28. Plaintiff and Defendants have validly executed three long-term lease agreements covering EBS spectrum in Rutland, Vermont.

29. Under the Leases, Defendants are required to file FCC Long Term Lease Applications for the relevant licenses with the FCC to extend Utopian's authority to hold the long-term Leases and use of the Channels.

30. In violation of Section 10.1 of the Leases, Defendants have failed to do so.

31. The Leases have value of at least $1 million.

32. Loss of the Leases would cause Plaintiff significant financial harm.

33. The Leases each provide for specific performance as a remedy for Defendants' breach.

**WHEREFORE,** Plaintiff Utopian Wireless Corporation respectfully requests that this Court:

A. Require the Defendants to perform the Lease agreements as contemplated by the parties, and specifically, require that the Defendants file the requested FCC Long Term Lease Applications with the FCC for each of the Leases;

B. If specific performance is not granted, enter a judgment against Defendants for the value of the Leases, interests, and costs;

C. Award Plaintiff attorneys' fees and costs pursuant to Section 20.3 of the Leases;

D. Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

By /s/ Andrew C. Crawford
Benjamin G. Chew (D.C. Bar No. 418577)
Andrew C. Crawford (D.C. Bar No. 1032080)
Brown Rudnick LLP
601 13th Street NW, Suite 600
Washington, DC 20005
(202) 536-1785
(617) 289-0717
BChew@brownrudnick.com
ACrawford@brownrudnick.com

*Attorneys for Plaintiff Utopian Wireless Corporation*

Dated: November 30, 2020